UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------x
OILMAR CO. LTD., PANAMA,                                **ALL CASES**
                Plaintiff,
    -against-                                                 303-CV-1121 (CFD)
ENERGY TRANSPORT, LTD., and P.T.
CABOT INDONESIA,
                Defendants.
------------------------------------------------------------x
THE INTERESTED UNDERWRITERS AT
LLOYD'S and THAI TOKAI PRODUCT CO.                       303-CV-1125 (CFD)
LTD.,
                Plaintiffs,
    -against-
M/T SAN SEBASTIAN and her freights, *in rem*
and OILMAR CO., LTD., *in personam*,

                Defendants.
------------------------------------------------------------x
PT CABOT INDONESIA,
                Plaintiff,           303-CV-1147 (CFD)
    -against-
M.V. SAN SEBASTIAN, *et al*.
                Defendants
------------------------------------------------------------x
CARBON BLACK PUBLIC CO., LTD.,
                Plaintiff,           303-CV-1153 (CFD)
    -against-
M/T SAN SEBASTIAN, *et al.*,
                Defendants.
------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN
## SUPPORT OF CROSS-MOTION TO DISMISS

*HEALY & BAILLIE, LLP*
*Attorneys for Plaintiff, Oilmar Co. Ltd., Panama*
*The Lock Building, Suite 104, 20 Marshall Street*
*South Norwalk, CT 06854-2282*
*(203) 354-1360*
*Jeremy J.O. Harwood (CT. Fed. Ct. No. 08031)*
*Matthew Marion (CT. Fed. Ct. No. 12264)*

## INTRODUCTION

Oilmar Co. Ltd. ("Oilmar") submits this Reply Memorandum of Law in support of its cross-motion under Admiralty Rule E and F. R. Civ. P. Rule 12(b)(5) to vacate the ex parte order issuing "Process of Maritime Attachment and Garnishment" ("PMAG") dated July 18, 2003 obtained by plaintiff Carbon Black Public Co., Ltd. ("Carbon Black") and (2) dismiss the complaints of all Cargo Interests naming the M.T. SAN SEBASTIAN, et al., as defendants, related to this action first filed in this Court by Oilmar as plaintiff on June 25, 2003 and consolidated by the Court's Order dated August 18, 2003 (the "August Order") for abuse of due process under F. R. Civ. P. Rule 12(b)(4). The following "opposition" has been received:

(1)     by memorandum of law of Carbon Black ("Carbon Brief") with declaration of its counsel, Richard H. Webber dated October 29, 2003 ("Webber Dec.");

(2)     by memorandum of P.T. Cabot Indonesia and Energy Transport Ltd. ("Cabot Brief");

(3)     by letter dated October 29, 2003 by New York counsel for "Interested Underwriters at Lloyd's and Tai [sic] Tokai Product Co. Ltd." (the "Lloyd's Letter").[1]

## THE FACTS

The facts are fully stated in the previously filed affidavits of Oilmar's lead New York counsel Jeremy J.O. Harwood dated July 14, 2003 and July 23, 2003. ("Harwood

---

[1] Oilmar does not intend to respond to the Lloyd's letter, unless the Court indicates it accepts it notwithstanding Lloyd's willful failure to comply with the pleading requirements set forth in the Federal Rules of Civil Procedure in asserting a legal argument in a letter to the Court asking the Court "deny Oilmar's cross-motion." The Court had not requested nor permitted "letter briefs" in opposition.

256062.1                                              1

Aff." and "Aff. No. 2") and in the affidavit dated October 9, 2003 in support of the Cross-Motion ("Aff. No. 3").  Accompanying this reply memorandum is a reply affidavit of even date ("Aff. No. 4").  Definitions are taken therefrom unless otherwise stated and the exhibits referred to herein as "Ex. __," are numerically or alphabetical sequential attachments to the four affidavits.

## CARBON BLACK'S BELATED "PURPORTED" SERVICE OF ITS SUMMONS AND COMPLAINT AND THE CARBON PMAG

Only after Oilmar filed its Cross-Motion did Carbon Black consider it necessary to provide Oilmar with a copy of the ex parte order that it obtained, and presumably served on garnishees soon thereafter, on July 18, 2003 (the "Carbon PMAG") which it hand-delivered and mailed on October 20, 2003 to Healy & Baillie's New York and Connecticut offices, respectively.  Webber Dec. Ex. 5.

Likewise, prompted by the Cross-Motion, only on October 28, 2003 did Carbon Black feel any necessity to serve its Summons and Complaint dated July 2, 2003 upon Oilmar's stated agents for service of process by delivering a copy to Healy & Baillie's New York office.  Webber Dec. Ex. 2.

As stated, and repeated in Aff. No. 4, Oilmar's counsel was unaware that the Carbon PMAG had been issued at any time prior to its receipt of the August Order which referred to it in a footnote.  Aff. No. 3, ¶ 8; Aff No. 4. ¶ 5.  Likewise, given that Oilmar's counsel had expressly requested executed copies of Carbon Black's pleading, Ex. D, and had been told "[w]e will provide copies ...", by Carbon Black's counsel, Ex. E, the present suggestion that it was Healy & Baillie's obligation by, inter alia, checking on

"Pacer" to ensure its client received the notice and service that Carbon Black is obliged to provide is absurd.  c.f. Carbon Brief at 6 ("Oilmar's counsel need only have accessed the Court's Pacer system to obtain a copy.")

# ARGUMENT

# REPLYING TO CARBON BLACK'S OPPOSITION

## POINT I

### THE CARBON BLACK PMAG ORDER SHOULD NOT HAVE BEEN ISSUED

### REPLYING TO THE CARBON BRIEF AT 1-2

**A.   Carbon Black Is Judicially Estopped From Denying That Oilmar Had An Agent For Service Of Process In The District**

Carbon Black's present argument, based upon its counsel's declaration, is nothing short of an admission that the ex parte declaration dated July 1, 2003 ("Webber Aff") by which it obtained the PMAG Order was "economical with the truth."

By fax dated June 24 to Carbon Black's counsel Healy & Baillie advised Oilmar had nominated the firm "either by our New York or Connecticut offices [where it has two offices] as you prefer" to act as its agent for service of process.  Aff. No. 1, Ex. 48.  Nevertheless, the "Affirmation pursuant to Supplemental Rule B(1)," purportedly executed on or about July 1, 2003 by Richard H. Webber, Esq. states:

> Upon information and belief, the defendant, Oilmar Co., Ltd., is not "found" within the District within the meaning of the Supplemental Rules for Certain Admiralty and Maritime Claims.  [i.e., has no agent for service of process on behalf of Oilmar in this action.

Ex. 51, Id., ¶ 4.

The Webber Declaration now, however, in rebutting Oilmar's due process and asserting timely service under F. R. Civ. P. Rule 4 states:

> The summons and complaint was duly served on October 28, 2003 upon Healy & Baillie, LLP, who has asserted that it is the agent for service of process on behalf of Oilmar in this action.

Id. ¶ 3.

The Webber Declaration has attached as exhibits affidavits of service of Carbon Black's Summons and Complaint on Oilmar <u>through Healy & Baillie, LLP as agents for service of process</u>. (Webber Dec., Exs. 2 & 5).  Carbon Black also argues under the caption "Oilmar has been properly served" that:

> Oilmar has been duly served with the [PMAG] and with the summons and complaint in this matter.

Carbon Brief at 5.

It is quite extraordinary, therefore, that Carbon Black also argues that "Oilmar's counsel's attempt to defeat the attachments by declaring itself an agent for service of process for Oilmar cannot stand." Id. at 1.  It is judicially estopped, not least by the declaration from its counsel, from now arguing, as it does, that Oilmar's nomination of Healy & Baillie, LLP as its agent for service of process in New York and Connecticut is invalid.[2]

---

[2] The August Order states that Healy & Baillie is "arguably" Oilmar's designated agent for service of process in Connecticut "prior to the time when the Rule B attachments were sought." Id. at 4.

**B.     The Existence Of An Agent For Service Of Process In This District Should Have Entailed Denial Of The Carbon PMAG And Should Have Been Discussed**

As stated by Professor Schoenbaum in Admiralty and Maritime Law (West, 3rd ed. 2001) § 19-2 at 992-93):

> The second and more crucial inquiry is either the defendant is present within the district for service of process. Does the defendant have an authorized agent or office within the district that can receive process? **If so, the maritime attachment will be defeated.** If not, it is proper. (Emphasis added).

The reason that the <u>absence</u> of an agent for service of process is "crucial" to the allowance of a valid PMAG is explained both by the historic purpose of this extraordinary remedy and the jurisdictional consequences arising from a party having an agent for service. See <u>Cordoba Shipping Co. Ltd. v. Maro Shipping Ltd., et al.</u>, 1980 AMC 1945, 1947-48 (D. Conn. 1980):

**REPLYING TO THE CARBON BRIEF AT 3-4**

**C.     The Cases Cited By Carbon Black, Notwithstanding Its Assertion of Proper Service Through Healy & Baillie, Are Inapposite**

Carbon Black's recitation of four cases from District Court outside the Second Circuit (ignoring the decision on Healy & Baillie's appointment by Oilmar by Judge Rakoff) and the concession in the August Order on this issue are entirely inapposite:

(1)     <u>Twentieth Century Fox Film Corp. v. M/V Ship Agencies</u>, 992 F. Supp. 1423, 1425 (M.D. Fla. 1997), contrary to Carbon Black's gloss, involved an "argue[ment] that because their counsel [<u>i.e.</u>, defendants] asserted for the first time at the post-attachment hearing that he was authorized to receive and accept service of process ...

attachment was ... improper ...."  The Court held "mere 'after process' presence [for service] does not counter plaintiff's representations of due diligence ...."  992 F. Supp. at 1426.  The Court also considered, as did Judge Rakoff, that the second prong was "minimum contacts."  The case is wholly against Carbon Black which knows very well the appointment of Oilmar's agent for service of process was well before it filed its action.

    (2)    <u>Transamerica Leasing, Inc. v. Frota Oceanice E. Amazonica, S.A.</u> 1997 WL 834554* - (S.D.Ala. 1997)

Carbon Black's citation of this case is quite astonishing given that their counsel was put on express notice <u>prior</u> to the filing of Carbon Black's <u>ex parte</u> action that Healy & Baillie was Oilmar's agent for service of process <u>in Connecticut</u>, Aff. 1, Ex. 48.  The Rule B defendants in <u>Transamerica</u> claimed they had an agent for service of process but, the Court ruled:

> . . . plaintiffs have satisfied the Court that they exercised due diligence in attempting to ascertain whether [defendant] could be served.  Specifically, plaintiffs have presented evidence . . . .

<u>Id</u>. at * 8.

In contrast, Carbon Black has provided no evidence whatsoever why in the mandatory Rule B(1)(B) affidavit it did not disclose the existence of Oilmar's agent for service in the District (even if contested).  It has not attempted to now carry its burden that "due diligence" would not have established that Healy & Baillie was Oilmar's agent for service - it simply contests the nomination.

    (3)    <u>Construction Exporting Enterprises, et al., v. Nikki Maritime Ltd., et al.,</u>

558 F. Supp. 1372 (S.D.N.Y. 1983)

The words "Agent(s) for Service of Process" do not even appear in that decision. The Court held that the "right to the attachment is not defeated by the [subsequent] filing of a general appearance." 558 F. Supp. at 1374. Moreover, as stated by Prof. Thomas J. Schoenbaum, <u>Admiralty and Maritime Law</u>, ("<u>Schoenbaum</u>"), (West 3rd Ed. 2001) ¶ 19-2 at 993:

> Attachment can be avoided, however, if the defendant enters a general appearance . . .

(4)   Navieras Inter-Americanos S.A., Inc. v. M/V VASILIA EXPRESS, et al., 930 F. Supp. 699 (D.P.R. 1996), <u>aff'd in part</u>, <u>vacated in part</u>, 120 F.3d 304 (1st Cir. 1997)

The shipowner defendant, Vasilia Inc., attempted to defeat the Rule B attachment by asserting:

> . . . the maritime attachment was wrongfully obtained, insomuch as legal counsel for defendant were given ad hoc authority on April 26, 1006, to receive process related to the case before the maritime attachment was actually executed over the res. Vasilia, Inc. also alleges that [others] . . . are agents for service of process . . . since May 10, 1996.

930 F. Supp. at 706.

The District Court failed to address the timing of the alleged appointment, the First Circuit did, as follows:

> As to the second inquiry, Vasilia argues that the attachment was wrongful because it had appointed an agent for service of process in the district. But the fact is <u>Vasilia's purported appointment of the agent came, at the earliest, on April 26, two days after Navieros moved for an order</u> of attachment (and after Navieros filed an affidavit, as required by Supplemental Rule B, saying Navieros had been unable to

>find the defendant within the district).   120 F.3d at 315
>(footnote omitted, emphasis added).

In light of (1) Judge Rakoff's holding in respect of the Agreement; (2) the clear authority that "a party can appoint virtually anyone, including an attorney as agent [for service of process] . . ."; and (3) F.R.Civ.P. Rule 4(h) providing for service on "a managing agent or general agent, <u>or to any other agent authorized by appointment</u> or by law to receive process . . .," Carbon Black's present denial of Healy & Baillie's <u>actual</u> appointment and advice of that appointment some 20 days <u>before</u> the Webber Affidavit is, at best, "economical with the facts."  Even if Healy & Baillie appointment as agent for service was then contested by Carbon Black, it should have been disclosed in the Webber Affirmation.

## POINT II

### OILMAR'S SURRENDER TO THIS COURT'S JURISDICTION MEANT THAT THE COURT HAD PERSONAL JURISDICTION OVER IT

### REPLYING TO CARBON BRIEF AT 4-5

In <u>Roell et al. v. Withrow</u>, 123 S. Ct. 1696, 1701, 155 L. Ed.2d 775, 784, __ U.S. __ (2003) the Court reviewed the Federal Magistrate Act which was "honored in the breach" by the petitioners' implied consent to the case proceeding before a magistrate "by their decision <u>to appear</u> before the Magistrate Judge without expressing any reservation ...." (emphasis added)  The Court noted, in a footnote, the legal consequence of an "appear[ance]" as follows:

>See Black's Law Dictionary 95 (7th ed. 1999) ("The term "appearance" ... designates the overt act by which [a

> party] submits himself to a court's jurisdiction .... An appearance may be expressly made by formal written or oral declaration, or record entry, or it may be implied from some act done with the intention of appearing and submitting to the court's jurisdiction"" (quoting 4 Am. Jur. 2d, Appearance § 1, p 620 (1995))).

Here, as the "Notice of Appearance" "expressly" provides, Oilmar submitted itself to the Court's jurisdiction. The PMAG Order was issued <u>after</u> Oilmar had filed its appearance dated July 2, 2003. Webber Dec., Ex. 3. Likewise, as stated by Chief Judge Ryan in <u>Squeez-a-Purse Corp. v. Stiller, et al.</u>, 31 F.R.D. 261, 263 (S.D.N.Y. 1962):

> The acquisition of jurisdiction *in personam* by a Court arises either from valid service of process or <u>voluntary submission to jurisdiction</u>. It may be acquired at the time of filing of a suit or <u>by appearance in a suit already pending.</u> [emphasis added].

If, however, the factors stated in the August Order are, contrary to Supreme Court precedent, necessary for Oilmar to be "found" within a "jurisdictional sense" neither now nor at any time in the future will the Court have <u>in personam</u> jurisdiction over Oilmar unless and until the <u>Seawind</u> jurisdictional contacts with Connecticut come into existence. See August Order at 5. There cannot be one rule of law for when a Court has <u>in personam</u> jurisdiction over <u>all</u> defendants in United States' courts separate and distinct from <u>in personam</u> defendants in Admiralty Rule B actions. Prof. Schoenbaum is quite correct on this issue and Carbon Black is wrong.

## POINT III

### OILMAR ALSO HAD THE "MINIMUM CONTACTS" TO DEFEAT A RULE B APPLICATION IRRESPECTIVE THAT NO SUCH RELIEF WAS PERMISSIBLE BECAUSE OF ITS AGENT FOR SERVICE OF PROCESS IN THE DISTRICT

### REPLYING TO CARBON BRIEF AT 2 AND 4-5

Oilmar undeniably both submitted to and availed itself of this Court's jurisdiction. As stated in Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 454, 52 S. Ct. 238, 76 L.Ed. 389 (1932):

> When the respondent brought the suit in the Federal District Court for the District of Massachusetts, it submitted itself to the jurisdiction of the court with respect to all the issues embraced in the suit, including those pertaining to the counterclaim of the defendants, petitioners here.  Equity Rule 30.  See Langdell's Eq. Pleading, c. 5, § 119; Frank L. Young Co. v. McNeal-Edwards Co., 283 U.S. 398, 400.

Carbon Black argues:

> In the present case, Oilmar's only contact with this District is its supposed appointment of its attorneys for the very limited purpose of accepting service of process ... Oilmar had no other presence in the district that might provide grounds for vacating the attachment.

Carbon Brief at 2.

After arguing that Healy & Baillie is not a valid agent for service of process and the application of the Connecticut Long Arm Statute Conn. Gen. Stat. § 33-929, to establish Admiralty Rule B jurisdiction, Carbon Black concludes:

> Beyond the purported agency [of Healy & Baillie], Oilmar has pointed to no other contracts it may have had with

> Connecticut to support a conclusion that it can be "found within the district" within the meaning of Rule B.

Carbon Brief at 5.

Only by flatly ignoring facts and expressly stated argument directly to the contrary can Carbon Black make such a misleading argument. The "found" prong at issue, as stated by Prof. Schoenbaum, supra, is:

> . . . merely jurisdictional; the inquiry is whether minimum contacts exist under the standards of International Shoe and its progeny. In most cases, this test is easily met, but it is not the most important determination.

Id.

In Oilmar's memorandum in support of its cross-motion ("Oilmar Memo.") we expressly made the "minimum contacts" argument under the following headings:

(1) "Oilmar's Surrender To This Court's Jurisdiction"; Oilmar Memo. at 15;

(2) "Other Jurisdictional Contacts":

"(a) The Lead Action";

"(b) The Role of Odin In Collecting Oilmar's Freight";

"(c) The August Order"; Oilmar Memo. at 15-17.

In the very case cited by Carbon Black, Transamerica, at * 5, the Court held:

> When a defendant challenges the validity of an attachment, <u>the burden is on the plaintiff to prove there was reasonable grounds</u> for issuing the writ. Salazar v. Atlantic Sun, 881 F.2d 73, 79 (3rd Cir. 1989) [emphasis added].

The Court is ill-served in reviewing its grant of an ex parte remedy (based upon a "partial" affidavit which fails to state that the most "crucial" ground for that relief is

256062.1                                11

missing) when arguments over "minimum contracts" by the party bearing the burden similarly omit mention of <u>all</u> of the above "minimum contacts" arguments made by Oilmar.  Unless Carbon Black simply did not bother to read Oilmar's brief the argument that Oilmar has made no "minimum contacts" argument other than its "purported agency" appointment of Healy & Baillie is deliberately misleading.  Given that the burden of proof lies with Carbon Black, it has demonstrably failed to carry it .

**POINT IV**

**<u>CARBON BLACK'S BELATED SERVICE DOES NOT SATISFY THE DUE PROCESS STANDARDS</u>**

**<u>REPLYING TO CARBON BRIEF AT 5-6</u>**

Supplement Admiralty Rule E(4)(f) provides in material part:

> . . . any person claiming an interest in it [arrested or attached property] shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated . . .

The "notes" to the 1985 Amendment state in material part:

> Rule E(4)(f) makes available the type of prompt post-seizure hearing in proceedings under Supplemental Rules B and Rule C that the Supreme Court has called for in a number of cases arising in other contexts.  <u>See</u> <u>North Georgia Finishing, Inc. v. Di-Chem, Inc.</u>, 419 U.S. 601 (1975); <u>Mitchell v. W.T. Grant Co.</u>, 416 U.S. 600 (1974).  Although post-attachment and post-arrest hearings always have been available on motion, an explicit statement emphasizing promptness and elaborating the procedure has been lacking in the Supplemental Rules.  <u>Rule E(4)(f) is designed to satisfy the constitutional requirement of due process by guaranteeing to the shipowner a prompt post-seizure hearing</u> at which he can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings.

[emphasis added]

Carbon Black's opposition brief stops just short of stating Oilmar's counsel are lying - it uses the "shorthand" for that accusation in stating:

> Oilmar's claim [or lack of due process] is not only irrelevant, it is also <u>disingenuous. . . . Oilmar's claimed ignorance</u> is the equivalent of the proverbial ostrich's head in the sand . . .
>
> <u>Oilmar's claims of ignorance</u> . . .

Carbon Brief at 6  (emphasis added).

Oilmar and its counsel emphatically did <u>NOT</u> have knowledge actual or constructive of the Carbon PMAG until reference was made to it in the Court's August Order.  Aff. No. 3, ¶ 8, Aff. No. 4, ¶ 5.  Neither Oilmar nor its counsel are "claim[ing] ignorance" on this issue - the suggestion they are is highly offensive.  What is inexplicable, however, is that Carbon Black thinks this Court is so pre-disposed to find against Oilmar that it has only accuse Oilmar's counsel of lying to avoid both to avoid carrying its own statutory burdens and to avoid addressing the manifest short-comings in the affidavit by which the ex parte relief was first obtained.  It is mistaken.

## POINT V

**THE ACTIONS BY CARGO INTERESTS MUST BE DISMISSED BECAUSE OILMAR HAS BEEN DENIED DUE PROCESS**

**FURTHER REPLYING TO CARBON BRIEF AT 5-6**

<u>Winter Storm Shipping, Ltd., v. Thai Petro Chemical Industry Public Co., Ltd., et al.</u> ("<u>Winter Storm</u>"), 310 F.3d 263-273 (2d Cir. 2002) held:

> We regard the due process safeguards added by the 1985 amendments to Admiralty Rules B and E are sufficient to satisfy constitutional requirements. . .

Oilmar's cross-motion argued that it was denied the "due process safeguards." This is, if only for appellate purposes, an issue upon which the Court is required to make findings of fact and conclusions of law. However, and more fundamentally, it is an issue that the Cargo Interest were required to address.

Oilmar asserted, <u>inter alia</u>, that the Cabot and Carbon Black Rule B(1)(6) affidavits were improper: as the record shows they were in deliberately failing that Oilmar had named an agent for service of process motion in this district even if Judge Rakoff's decision on the effectiveness of that nomination was rejected by Cargo Interests in this Court. Oilmar also asserted that:

(1) that the Rule E(4)(f) safeguard of a "prompt hearing" did not happen. Indeed, for Carbon Black to assert that it could sit on its PMAG and require Oilmar to examine the electronic docket, discover it and only then was it required to be served is clearly wrong. <u>c.f</u>. Carbon Brief at 6 [3]

(2) Oilmar argued that the "Attachment to acquire jurisdiction [was] unnecessary." <u>Cordoba Shipping Co. Ltd. v. Maro Shipping Ltd., et al.</u>, 1980 AMC 1945, 1948 (D. Conn. 1980). In the circumstances the resort to Rule B was plainly abusive.

---

[3] The New York Local Admiralty rule, as Carbon Black's New York firm that is in control of this case well knows, requires "prompt notice."

## POINT VI

### CARBON BLACK'S INVOCATION OF
### CONNECTICUT LONG ARM STATUTE IS WRONG

### REPLYING TO CARBON BRIEF AT 4-5

Carbon Black also asserts, like P.T. Cabot, the application of Connecticut's long arm statute, Conn. Gen. Stat. § 33-929. This is simply wrong, as argued by Oilmar in a separate pleading in response to P.T. Cabot's motion in the lead case.

### REPLYING TO ETL/PT CABOT'S OPPOSITION BRIEF

### POINT VII

### ETL HAS MADE ITSELF A PARTY TO P.T. CABOT'S ACTION AND OILMAR IS ENTITLED TO SEEK RULE E RELIEF AGAINST IT

### REPLYING TO BRIEF AT 1-4

ETL/Cabot's Brief Point under the heading "Oilmar's Cross-Motion is Devoid of Merit" makes no sense. The belated reference to 9 U.S.C. § 8, which is not referenced anywhere in any complaint, is irrelevant; that section provides no independent basis for jurisdiction. See Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 25 n.32 (1983).

The opposition to Oilmar's Cross-Motion is, however, made on behalf of Energy Transport Ltd. ("ETL") and PT Cabot. Given that ETL is now claiming the benefit of PT Cabot's PMAG and Arrest Orders and opposing Oilmar's Cross-Motion to vacate them it should, if those orders are upheld, permit Oilmar to seek counter-security under Rule E.

It should also be noted that ETL's counsel was well aware of this potential given

that its Complaint in New York was borrowed wholesale, but filed solely in PT Cabot's name in this district. While Oilmar is castigated for "maneuvering" to avoid attachment of its funds the corollary to that relief provided by Rule E is exactly what ETL attempted to avoid and, inadvertently or not, how now exposed itself to. If "justice" is to be applied even-handedly, then if the Cabot Orders are upheld Oilmar should be entitled to seek Rule E counter-security for ETL's deliberate manipulation and late payment of Oilmar's freight so that it could, using its subsidiary, Cabot, then attach/arrest it in this action. See Aff. No. 1. That relief will be sought by separate motion.

## POINT VIII

### ETL/CABOT CONCEDE THAT THE CABOT ORDERS ARE AN ABUSE OF DUE PROCESS

### REPLYING TO BRIEF AT 4-5

ETL/Cabot have chosen not to address the argument that, <u>inter alia</u>, Oilmar was denied "due process" on the Cabot Orders for the undisputable reason that "[n]one of the 'safeguards" that permit issuance of <u>ex parte</u> PMAGs was met ...". Oilmar Memo. at 18. Categorizing the argument as one of "tantamount to impermissible re-argument" does not excuse a party that bears the burden of proof from declining to carry it.

Accordingly, for the reasons stated in Oilmar's Memo., at Point VI, and as unopposed by ETL/PT Cabot (or in proper form by Lloyd's) the Court <u>must</u> vacate its prior orders based upon the denial of the "due process safeguards" to which Oilmar was

entitled.  This is a burden that cannot and should not be "carried" by or excused by the

Court where the litigants who seek and obtain ex parte relief fail to bother.

Dated:        South Norwalk, Connecticut
              November 14, 2003

                                          Respectfully submitted,

                                          HEALY & BAILLIE, LLP


                                            s/Jeremy J.O. Harwood
                                          Jeremy J.O. Harwood (Fed. Ct. No. 08031)
                                          Matthew A. Marion (Fed. Ct. No. 12264)
                                          The Lock Building, Suite 104
                                          20 Marshall Street
                                          South Norwalk, CT 06854-2282
                                          (203) 354-1360
                                          Attorneys for Plaintiff Oilmar Co., Ltd.,
                                          Panama and, pursuant to Claim of Owner
                                          for the Vessel *in rem*

Of Counsel:
      Jeremy J.O. Harwood
      Matthew A. Marion

256062.1                                              17

## AFFIDAVIT OF SERVICE BY COURIER

STATE OF NEW YORK    )
                     : ss.:
COUNTY OF NEW YORK   )

The undersigned being duly sworn, deposes and says:

That deponent is not a party to the action, is over 18 years of age. That on November 14, 2003, he caused to be served a true copy of the foregoing document via FedEx courier upon:

| | |
|---|---|
| Robert K. Marzik, Esq. | Kirk M.H. Lyons, Esq. |
| Attorneys for P.T. Cabot Indonesia and Energy Transport Ltd. | Attorneys for "The Interested Underwriters at Lloyds and Thai Tokai Product Co. Inc." |
| Law Offices of Robert K. Marzik P.C. | Lyons Skoufalos Proios & Flood |
| 1512 Main Street | 19 Coventry Lane |
| Stratford, CT 06615 | Riverside, CT 06878 |
| Tel: 203-375-4803 | Tel: 203-348-5544 |
| Fax: 203-386-0136 | Fax: 203-348-5547 |

Richard Webber, Esq.
Attorneys for Carbon Black Public Co. Ltd.
Hill Rivkins & Haden
1115 Broad Street
Bridgeport, CT 06604
Tel: 203-367-5535
Fax: 203-367-5536

                                                                    s/Jeremy J.O. Harwood
                                                                    JEREMY J.O. HARWOOD

Sworn to before me this
14th day of November, 2003

_____
      Notary Public

256062.1