UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| OILMAR CO. LTD., PANAMA,<br><div align="right">Plaintiff,</div><div align="center">-against-</div>ENERGY TRANSPORT, LTD., and P.T. CABOT INDONESIA,<br><div align="right">Defendants.</div> | **CONSOLIDATED CASES**<br><br>3:03-CV-1121 (JCH) |
| THE INTERESTED UNDERWRITERS AT LLOYD'S and THAI TOKAI PRODUCT CO. LTD.,<br><div align="right">Plaintiffs,</div><div align="center">-against-</div>M/T SAN SEBASTIAN, *et al.*,<br><div align="right">Defendants.</div> | 3:03-CV-1125 (JCH) |
| PT CABOT INDONESIA,<br><div align="right">Plaintiff,</div><div align="center">-against-</div>M.V. SAN SEBASTIAN, *et al.*,<br><div align="right">Defendants.</div> | 3:03-CV-1147 (JCH) |
| CARBON BLACK PUBLIC CO., LTD.,<br><div align="right">Plaintiff,</div><div align="center">-against-</div>M/T SAN SEBASTIAN, *et al.*,<br><div align="right">Defendants.</div> | 3:03-CV-1153 (JCH) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT OILMAR CO. LTD.'S MOTION TO VACATE FINAL ARBITRATION AWARDS ISSUED IN FAVOR OF P.T. CABOT INDONESIA AND ENERGY TRANSPORT LIMITED**

<div align="center">

BLANK ROME LLP
Thomas H. Belknap, Jr.
Alan M. Weigel
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000
*Attorneys for Defendant Oilmar Co. Ltd.*

</div>

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ........................................................................ 1

ARGUMENT ................................................................................................. 2

POINT I        CABOT HAS WAIVED ITS RIGHT TO OBJECT TO VENUE.................. 2

POINT II       VENUE IS PROPER IN THIS DISTRICT ...................................... 5

POINT III      THE COURT SHOULD VACATE THE ARBITRATION AWARD ON
               THE BASIS OF MANIFEST DISREGARD OF THE LAW AND/OR
               FUNDAMENTAL UNFAIRNESS ............................................... 6

POINT IV       THERE ARE NO GROUNDS FOR AWARDING SANCTIONS
               AGAINST OILMAR ............................................................. 7

CONCLUSION............................................................................................ 10

i

## PRELIMINARY STATEMENT

Oilmar Co. Ltd. ("Oilmar") submits this Reply Memorandum of Law in further support of its motion to vacate the Partial Final Award on Liability dated June 12, 2013 ("Liability Award" ) and the Final Award On Quantum of Damages dated August 19, 2014 ("Damages Award") (together the "Arbitration Awards") issued in favor of P.T. Cabot Indonesia ("Cabot") and Energy Transport Limited ("ETL") (together "Cabot") and in reply to Cabot's Opposition to Oilmar's Motion to Vacate Final Arbitration Award ("Cabot's Opp. Memo.").

Cabot fully concedes this court has *in personam* jurisdiction and does not contest this Court's admiralty subject matter jurisdiction.  Cabot also concedes that venue is proper in this Court under applicable Supreme Court authority interpreting the Federal Arbitration Act, but it now raises for the first time the new argument that the matter should nevertheless have been brought in New York rather than Connecticut.  Cabot's substantial delay in raising this objection, however, coupled with its affirmative conduct to date in this action, constitute a waiver of the right to contest venue at this late stage of the proceedings.

Cabot's objection to venue is particularly remarkable given that it successfully invoked this Court's jurisdiction *as a plaintiff* when it obtained a Rule B attachment of more than $2.1 million of Oilmar's funds, which currently reside in this Court's registry awaiting further order of this Court.  Its objection is all the more remarkable given that it not only did not contest venue at the time Oilmar brought its original motion to vacate the Liability Award but actually affirmatively requested that this Court confirm the award under the FAA.  Cabot subsequently wrote to the Court on its own initiative, after the Damages Award was issued, requesting this Court to confirm that award too.  With all that in the background, Cabot's suggestion now that New York would be a better place to litigate these issues must be rejected.

In any event, Cabot has provided no valid argument why transfer of venue would be appropriate in this case.  Cabot fully concedes that this Court has concurrent jurisdiction, and the fact is that at some point the parties are going to have to come back before this Court in any event to address final distribution of the attached funds currently residing in this Court's registry.  Simple notions of judicial economy thus weigh heavily in favor of venue in this Court.

Cabot's opposition provides no new arguments in opposition to Oilmar's motions to vacate the Arbitration Awards on the basis of manifest disregard of the law and the fundamental unfairness of the arbitration.  And Cabot's repeated citations to the panel majority's findings concerning the cause of the explosion only further underscore the legal errors in the panel majority's ruling and the gross prejudice that resulted from the panel majority's reliance on unfair hearsay evidence.  These errors clearly support a finding that the panel manifestly disregarded the applicable law and fundamentally prejudiced Oilmar in the manner in which it conducted the proceedings.

Finally, Cabot's contention that it is entitled to an award of attorneys' fees against Oilmar under 28 U.S.C. § 1927 is frivolous and must be rejected.

## ARGUMENT

### POINT I

### CABOT HAS WAIVED ITS RIGHT TO OBJECT TO VENUE

The right to object to improper venue may be waived expressly, or implicitly by failure to interpose a timely and sufficient objection or by conduct amounting to waiver as a matter of law. *Manley v. Engram*, 755 F.2d 1463, 1468 (11th Cir. 1985).  A party's right to challenge venue is waived "unless timely objection is interposed."  *Azelyant v. B. Manischewitz Co.*, No. 98-CV-2502, 2000 U.S. Dist. LEXIS 2192, at*8-9 (E.D.N.Y. Jan. 12, 2000)(*quoting Concession*

2

*Consultants, Inc. v. Mirisch*, 355 F.2d 369, 371 n. 1 (2d Cir. 1966); *see also* 28 U.S.C. § 1406(b) ("Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue.")

A party also can lose its right challenge venue through its pre-trial conduct. *See Altman v. Liberty Equities Corp.*, 322 F. Supp. 377, 378-79 (S.D.N.Y. 1977)(describing "waiver by implication"). The inquiry courts use to determine whether a party has waived its right to challenge venue is fact specific. *See Sherman v. Moore*, 86 F.R.D. 471, 472 (S.D.N.Y. 1980) (collecting cases describing waiver by implication). Thus, as in *Krape v. PDK Labs Inc.*, 194 F.R.D. 82, 86 (S.D.N.Y. 1999), the failure to timely raise venue claims and representations that the court was the proper forum should result in the rejection of a motion alleging that venue should be elsewhere.

Cabot has clearly waived its right to contest venue here, both by its untimely objection and through its own conduct in this litigation. *On the first point*, Cabot's objection to venue in this Court is clearly untimely. The original action was filed in 2003, and yet Cabot did not raise any challenge to venue in this Court until well <u>after</u> Oilmar's motion to vacate the Liability Award was fully briefed and submitted to this Court. (*See* Doc. No. 191). Indeed, the only time the issue even arose was after the Court *sua sponte* raised the much more limited question of whether specific language in the Federal Arbitration Act precluded venue in this Court. Even Cabot concedes that the FAA does not preclude Oilmar's claims here (Cabot's Opp. Memo at 3), but now it has decided that perhaps these motions should instead have been filed in New York. Any such application to transfer venue at this late stage in the proceedings is untimely, however, and the right to make such a request has been waived.

3

*On the second point*, Cabot's own filings in this Court have waived its right to challenge venue.  In the first place, Cabot itself invoked venue in this Court when it filed its initial action seeking and obtaining a roughly $2.1 million attachment of Oilmar's property.  (*See* 3:03cv1147, Doc. No. 1, ¶¶ 2 – 3.)  That attachment still stands, with Oilmar's funds in this Court's registry, and ultimately the parties will have no choice but to come before this Court to resolve their respective interests in the attached funds.

Cabot's own Rule B complaint alleges that jurisdiction is proper in this action under Chapters 1 and 2 of Title 9 U.S.C., Sections 1 through 15 and Sections 201 through 208, inclusive.  The cited U.S. Code Sections include the venue provisions of the Federal Arbitration Act ("FAA").  9 U.S.C § 9.  Thus, Cabot has itself previously alleged that venue is proper in this Court.

Moreover, Cabot's affirmative request that this Court confirm the Arbitration Awards is, by itself, a clear waiver of its right to challenge venue.  As more fully detailed in its supplemental brief on jurisdiction, (Doc. No. 202), when Oilmar filed its motion to vacate the Liability Award, Cabot and ETL not only did not contest venue in this Court in their opposition papers but they affirmatively requested this Court to confirm the award and enter judgment in its favor.  (Doc. No. 191, p. 12).  In addition, shortly after the Damages Award was issued, Cabot wrote to this Court on its own initiative expressly requesting that it "confirm the Final Award and enter judgment on the Final Award in favor of Cabot and ETL."  (Doc. No. 196.)  In its opposition to Oilmar's motion to vacate the Damages Award, Cabot again affirmatively requested that the Court confirm the Arbitration Award.  (Cabot's Opp. Memo. at 11.)  These actions are clear and unequivocal waivers of the right to contest venue before this Court.

**POINT II**

**VENUE IS PROPER IN THIS DISTRICT**

Even if Cabot has not waived its right to challenge venue in this Court, it has presented no facts by which the Court could decide that venue is not appropriate in this District.  The general venue statute does not require the Court to determine the best venue, only whether the District in which the matter is brought is a suitable one.  *See, e.g., Bates v. C&S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir. 1992).  Notwithstanding Cabot's arguments concerning the propriety of venue in the Southern District of New York, (Cabot's Opp. Br. at 1 – 4), venue is clearly appropriate in this District.

Cabot has attached over $2.1 million of Oilmar's funds which remain in the Court's registry, a fact which Cabot fails to acknowledge but which should have made obvious why Oilmar brought its motion to vacate in this District.  Cabot filed a Complaint, (3:03cv1147, Doc. No. 1), a motion to compel arbitration, (Doc. Nos. 17 – 35), and requests to confirm the Liability and Damages Awards.  Oilmar filed its own action in this Court, (Doc. No. 3), submitting itself to the Court's jurisdiction.  Accordingly, under the general venue statute, this District is an appropriate forum for Oilmar's motion to vacate.

Cabot's accusations that Oilmar "flouted" the orders of the Southern District of New York, (Cabot's Opp. Memo at 2), are meritless.  By its plain terms, Judge Leisure's order directed the parties to return to his court to "resolve any unsettled claims."  *See Energy Transp., LTD. v. M.V. San Sebastian*, 348 F. Supp. 2d 186, 208 (S.D.N.Y. 2004).  As there were no claims between Cabot and Oilmar outside the scope of the arbitration, there was nothing to bring to Judge Leisure for further litigation.  Notably, contrary to Cabot's implication, nothing in Judge Leisure's order specifically required that the parties bring motions to confirm or vacate in the Southern District of New York.  *See id.*  Nor could he have done so given the Supreme

Court's holding in *Cortez Byrd Chips v. Bill Harbert Constr. Co.*, 529 U.S. 193, 203 (2000), that, notwithstanding that the FAA provides for venue in New York where the Arbitration Award was made, venue also is proper under the general venue statute in Connecticut where Oilmar's property is located and where the parties are admittedly subject to personal jurisdiction.

Moreover, any argument that Oilmar flouted Judge Leisure's orders by bringing its motions to vacate is wholly belied by Cabot's own actions requesting this Court to confirm the Arbitration Awards. Accordingly, this District is the proper venue to consider Oilmar's motions to vacate the Arbitration Awards.

### POINT III

### THE COURT SHOULD VACATE THE ARBITRATION AWARD ON THE BASIS OF MANIFEST DISREGARD OF THE LAW AND/OR FUNDAMENTAL UNFAIRNESS

Cabot concedes, as it must, that the Fire Statute and COGSA fire exemption clearly apply to this matter and were known and correctly stated by the Panel majority. (Cabot's Opp. Memo. at 6.) Despite the Panel majority's knowledge and recital of the correct governing law, however, the Arbitration Award clearly reflects a manifest disregard of the applicable standards.

The panel majority's findings recited by Cabot, (Cabot's Opp. Memo. at 7 – 9), rather than demonstrating compliance with the standards of the Fire Statute and COGSA fire exemption, instead reflect an irrelevant "due diligence" analysis which led to an ultimate improper finding that Oilmar failed to exercise due diligence. Not one of the facts recited by Cabot supports the "actual fault or privity" standard required as part of the fire defense analysis under the Fire Statute and COGSA. Cabot further underscores the panel majority's error by pointing out the panel majority's finding that the explosion was the "foreseeable result" of Antares management practices, the precise type of holding that, under the correct application of

the Fire Statute and COGSA, would not result in Oilmar's liability.   Accordingly, Oilmar

submits the Arbitration Award should be vacated on the basis of manifest disregard of the law.

Cabot's arguments opposing vacating the Arbitration Award on the basis of fundamental

unfairness to Oilmar concedes that vacating an award on the basis of improper evidence is

appropriate if it is shown that the arbitration panel abused its discretion.  (Cabot's Opp. Memo. at

10.)   The panel majority's fundamental reliance on hearsay Attorney Notes and Cabot's

Ukrainian lawyer's double-hearsay testimony was a clear abuse of its discretion, grossly

prejudicial to Oilmar, and rendered the arbitration fundamentally unfair.

Cabot's argument that Oilmar cannot complain about any inability to cross-examine

witnesses, (Cabot's Opp. Memo. at 10), is without support and a complete misrepresentation of

the record.  As the record from the arbitration clearly reflects, the witnesses were not under

Oilmar's control, but were employees of a separate and independent manning company.  (*See*

Belknap Decl. dated Sep. 12, 2013, Ex. "I" (Doc. No. 186-9) at 1143.)  And far from shielding

the witnesses from testifying at the arbitration, Oilmar went to extraordinary lengths to attempt

to procure their attendance but were rebuffed at every attempt.  (*See, e.g., id.* at 1143 – 46.)

Accordingly, the fundamental prejudice to Oilmar is sufficient grounds for the Court to vacate

the Arbitration Award.

## POINT IV

### THERE ARE NO GROUNDS FOR AWARDING SANCTIONS AGAINST OILMAR

Cabot's argument for sanctions, (Cabot's Opp. Memo. at 11 – 13), completely ignores the

standards the Court must consider before imposing sanctions under 28 U.S.C. § 1927.   In the

context of a motion to vacate an arbitration award, to impose sanctions the Court must find

"clear evidence that (1) the offending party's claims were entirely meritless and (2) the party

acted for improper purposes." *U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, No. 04 Civ. 2504, 2004 U.S. Dist. LEXIS 24685, *30-35 (S.D.N.Y. Dec. 1, 2004)(*quoting Agee v. Paramount Communications*, 114 F.3d 395, 398 (2d Cir. 1997)).  Conversely, a claim is "colorable when it has some legal and factual support, considered in light of the reasonable beliefs" of the party making the claim.  *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999) (internal citations omitted).

To impose sanctions, the Court must support both conclusions with "a high degree of specificity in the factual findings."  *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009).  Bad faith may be inferred "only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."  *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) (internal quotation marks and citations omitted).

As the court cautioned in *DigiTelCom, Ltd. v. Tele2 Sverige AB*, No. 12 Civ. 308, 2012 U.S. Dist. LEXIS 105896, at *17-21 (S.D.N.Y. July 25, 2012), a case prominently relied upon by Cabot, (Cabot's Opp. Memo. at 11), "[s]anctions must not be imposed lightly" and "courts should be careful not to chill parties' good-faith challenges to arbitration awards where there are serious questions" concerning the tribunal's conclusions.  *See, e.g., Great Atlantic and Pacific Tea Co. v. Local Union No. 338, Retail, Wholesale and Department Store Union, AFL-CIO*, No. 95 Civ. 5255, 1996 U.S. Dist. LEXIS 7207, at *3 (S.D.N.Y., May 28, 1996) (attorneys' fees not awarded where party's motion to vacate based on good faith belief that award was invalid).

In this case, Oilmar's claims are completely meritorious and do not evince bad faith. Oilmar's motion to vacate the Liability Award based on compelling evidence that the panel majority manifestly disregarded the law and also acted in a manner that was grossly prejudicial

to Oilmar.  Oilmar's separate motion to vacate the Damages Award was filed to ensure that any order vacating the Liability Award was equally applicable to the panel's "final award" in the arbitration.  Indeed, this point was expressly discussed during the Court's September 4, 2014 telephone status conference, and the Court specifically offered Cabot the opportunity to simply incorporate its original briefing by reference.  But Cabot elected not to do so.  Having made that election, Cabot cannot now be heard to complain about additional fees and costs incurred as a result.

Cabot's arguments concerning Oilmar's conduct in the arbitration and in the New York and Georgia actions, (Cabot's Opp. Br. at 12 – 13), are completely irrelevant.  Moreover, Cabot's partial quote from the Damages Award misrepresents the panels' determination of why fees incurred by Cabot's local counsel in Connecticut and Georgia were recoverable.  Cabot also neglects to mention that its own conduct in the arbitration resulted in the panel's denying almost 25% of its fee request and the fees claimed for discredited witnesses.

9

## <u>CONCLUSION</u>

Oilmar respectfully submits that for all of the foregoing reasons venue in this District is proper and the Court should enter an order vacating the Arbitration Awards on the on the basis of manifest disregard of the law and/or fundamental unfairness and granting Oilmar such other relief as may be just and equitable.

This 24th day of September, 2014.

Respectfully submitted,
BLANK ROME LLP

By: /s/*Thomas H. Belknap, Jr.*_____
Thomas H. Belknap, Jr.
Alan M. Weigel
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000

Attorneys for Defendant Oilmar Co., Ltd.

10